ance, plaintiffs were refused telephone service on August 28th, and again on the 29th, and, finally, one of them again called at the same office of defendant on September 2d, and exhibited anew their check in payment of the July bill indorsed by defendant, as well as their other check for the August payment similarly indorsed. After numerous demands that their service be resumed, plaintiffs were finally furnished with telephone service on September 5th.

Defendant claims that the failure to furnish plaintiff with service was due to negligence upon the part of its representatives, and that as their negligence, no matter how gross, could not amount to bad faith, the plaintiffs were not entitled to recover the penalty. Without passing upon the question of whether the defendant's repeated refusals to grant the plaintiffs their service in the face of repeated proofs that nothing was due from them might not be so persistent, unreasonable, and long-continued as in itself to be evidence of bad faith, I think that this action must fail because the statute has no application to the state of facts here disclosed. The statute is a penal one and must be strictly construed. Examining its language, I find nothing which applies to a refusal to furnish service to a subscriber with whom the telephone company has a contractual relationship. The statute would appear from its terms to be designed to prevent discrimination by a telephone or telegraph company between persons seeking its service. One sustaining contractual relationship with a telephone company, however, has his remedy for whatever damage he may sustain through the improper acts of the company in an action for breach of the contract between them. It is to such an action, it seems to me, that the plaintiffs herein must be relegated, since they had such a contract with the defendant. It seems clear that this penal statute is not intended to cover, and does not cover, the case of a breach of a contractual relationship.

The determination of the Appellate Term will therefore be reversed, with costs in this court and in the Appellate Term, the judgment of the Municipal Court reversed, and judgment directed in favor of defendant with costs. Order filed. All concur.

---

(166 App. Div. 376)

MERLE v. SOCIOLOGICAL RESEARCH FILM CORPORATION.

(Supreme Court, Appellate Division, First Department. January 22, 1915.)

1. LIBEL AND SLANDER ☞15—LIBEL BY MOTION PICTURES.

Where a moving picture production tends to bring a person into disrepute, it may give rise to a right of action for libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 1; Dec. Dig. ☞15.]

2. LIBEL AND SLANDER ☞9—LIBEL OF BUSINESS—ELEMENT OF LIABILITY—SPECIAL DAMAGE.

Words spoken or written primarily against a man's business cannot give rise to a right of action for libel without special damage unless they also directly charge the plaintiff with a personal wrong.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80–89; Dec. Dig. ☞9.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. LIBEL AND SLANDER ⚖═97—COMPLAINT—DEMURRER—TRUTH OF ALLEGA-
TIONS.

In an action for libel contained in a moving picture production, on de-
murrer to the complaint the description of the picture must be taken as
true, although the reasonable inferences which can be drawn from such
description cannot be extended by innuendo.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 234–
236; Dec. Dig. ⚖═97.]

4. LIBEL AND SLANDER ⚖═89—COMPLAINT—SUFFICIENCY.

A charge, reasonably expressed through the medium of motion pic-
tures, entitled "The Inside of the White Slave Traffic," by showing plain-
tiff's factory with his name in a sign thereon, that his place of business,
where many women were employed, is a place where conditions are such
that it is used as a rendezvous for cadets and their victims, reasonably
implies such a charge of personal wrongdoing on the part of the owner
of the premises as to bring him into general disrepute, and so to give
rise to an action for libel, irrespective of special damage.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 213,
214; Dec. Dig. ⚖═89.]

5. TORTS ⚖═8—USE OF NAME—RIGHT TO PRIVACY.

Under Civil Rights Law (Consol. Laws, c. 6) § 50, giving a person the
unlimited control of the use of his name or portrait by others so far as
advertising for trade purposes is concerned, and authorizing an action
for damages for violation of the right, where defendant merely took mo-
tion pictures of a factory which chanced to display the owner's name in
a sign thereon, the exhibition of such pictures with such name gave such
owner no cause of action; the use of the name being involuntary and
occasioned by the mere lawful act of photographing the factory, and not
for advertising or to obtain trade.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 8; Dec. Dig. ⚖═8.]

6. TORTS ⚖═8—USE OF NAME—RIGHT TO PRIVACY.

Under Civil Rights Law (Consol. Laws, c. 6) § 50, where a motion pic-
ture manufacturer takes a picture of a factory with the owner's name dis-
played in the sign thereon and thereafter takes an interior arranged by
himself purporting to be the interior of such factory, and uses such own-
er's name to describe such interior, such owner has a right of action
against such film manufacturer.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 8; Dec. Dig. ⚖═8.]

Action by August G. Merle against the Sociological Research Film
Corporation. To the complaint setting forth two causes of action de-
fendant demurs. Demurrer overruled as to the first cause of action
and sustained as to the second.

The following is the opinion of the court below by Lehman, J.:

The plaintiff in his complaint attempts to set forth two causes of action,
both based upon the production of a moving picture film or play entitled, "The
Inside of the White Slave Traffic," in which the producer depicts a factory
and building bearing the plaintiff's firm name of August G. Merle & Co. The
defendant has demurred to both causes of action. The first cause of action
is for libel, and the only allegations which are, in my opinion, possibly mate-
rial to a personal action for libel as distinguished from an action for libel of
the plaintiff's business, are: That the plaintiff does business under the firm
name of August G. Merle & Co., has an excellent name and reputation, and
that he employs a large number of hands; that the defendants have produced
and exhibited a moving picture firm or play called "The Inside of the White
Slave Traffic," wherein they purported to portray the life of those engaged or
associated in the said white slave traffic, wherever possible showing the actual

places where the traffickers operate; and that in said play they showed the building wherein the plaintiff's business is located, and prominently displayed thereon and as part thereof the plaintiff's name and his business sign, "August G. Merle & Co., Infants' and Children's Headwear," and also showed a factory purporting to be located in said building and to be plaintiff's said establishment and factory as places where the said cadets and traffickers plied their vicious trade and obtained victims from among the girls employed in said building and establishment, and as places used by said cadets and traffickers as rendezvous between them and the unfortunate victims whom they succeeded in obtaining or procuring in said building and factory; "that the defendants thereby falsely, untruthfully, and maliciously charged, and intended to charge, the plaintiff with being in some way identified or connected with or related to the said white slave traffic or system or with said cadets or traffickers, with allowing or permitting the said trafficking in his establishment or in and around the building wherein his place of business was located, either for gain or otherwise, and that in the said building and in the plaintiff's said establishment there was grave and serious danger for the girls and women and for the young men employed therein that they might be approached or enticed or seduced or molested by these cadets or white slave traffickers and induced, corrupted, enticed, or forced into a life of vice, crime, shame, and prostitution, and that in some way the plaintiff had knowledge or notice of this condition of affairs, and that he participated therein, or at least acquiesced in or countenanced the same.."

[1. 2] A suit for libel based upon a moving picture production is a somewhat novel proceeding, but there is no doubt that if the production tends to bring a person into disrepute it may give rise to such an action. The serious question in this case is, however, whether the alleged libel is a libel directed against the plaintiff's business or a libel against himself personally, for concededly the complaint does not contain allegations of special damage sufficient to state a cause of action if the libel is directed only against his business. The distinction between the two classes of cases is pointed out in the case of Marlin Fire Ins. Co. v. Shields, 171 N. Y. 384, 390, 64 N. E. 163, 59 L. R. A. 310. The rule seems to be that words spoken or written primarily against a man's business cannot give rise to an action for damages without special damage unless they also directly charge the plaintiff with a personal wrong.

[3, 4] Whether the picture used in this case does charge the plaintiff personally with any wrongdoing must be determined from the discription of the picture itself, and, though upon this motion the description of the picture must be taken as true, the reasonable inferences which can be drawn from that picture cannot be extended by innuendo. It seems to me that the only fair inference to be drawn from that picture is that it contains a charge that the plaintiff's place of business is a place where cadets and white slave traffickers ply their vicious trade and obtain victims and is used as a rendezvous between them and their victims, and so far supports at least the innuendo that the plaintiff permits the traffic to proceed upon his premises. It does not, however, charge the plaintiff with actual knowledge of such traffic. The case therefore seems to me to come directly down to the question: Does a charge that a place of business where many girls are employed is used as a place where the white slave trade may be recruited and as a rendezvous for cadets and their victims reasonably imply such moral wrong against the owner of the place of business as would bring him personally into general disrepute?

It seems to me quite clear that, even if we may assume that the owner of the place of business is ignorant of such conditions, yet public opinion would hold him in abhorrence for being so careless of the conditions surrounding the place where his women employés work that evil men can use the place to entice them into vice. Moreover, it would seem that a charge that a business is being carried on in a vicious manner might well reasonably imply that the owner of the business is morally responsible therefor. The defendant, however, relies upon the case of Kennedy v. Press Publishing Co., 41 Hun, 422, in which it was held that a charge that the plaintiff's saloon was the resort of improper characters, and that the influence of association had there was

bad, was held not to be a libel on the plaintiff personally, and on the case of Bosi v. N. Y. Herald Co., 33 Misc. Rep. 622, 68 N. Y. Supp. 898, affirmed on opinion below 58 App. Div. 619, 68 N. Y. Supp. 1134, where a similar construction was given to an article charging that the plaintiff's restaurant was a resort favored by anarchists. Both these cases seem to rest upon the principle that a restaurant or saloon keeper is not personally responsible for the character of his guests, and that therefore the articles affect the plaintiff only in his business; but, whatever may be the moral responsibility of a saloon or restaurant owner to keep out vicious guests, the measure of responsibility resting upon a factory owner, who has complete control of his premises and can restrict visitors there in any way he sees fit, is obviously governed by different considerations.

It follows that the demurrers to the first cause of action are overruled, with leave to the defendants to withdraw the demurrers and serve an answer within 20 days after notice of entry of order herein.

[5, 6] The second cause of action sets forth practically the same facts as the basis of a cause of action for a violation of section 50 of the Civil Rights Law, in that the defendants used the plaintiff's name for the purposes of trade without his consent. It seems to me that no cause of action can be predicated upon the use made of plaintiff's name in the manner set forth. "The statute is, in part at least, penal and should be construed accordingly." Binns v. Vitagraph Co., 210 N. Y. 51, 103 N. E. 1108. The use of the plaintiff's name in this case is not for the purpose of obtaining trade or advertisement; apparently, it merely appears in the picture because it was placed upon the building which is a part of the picture. Certainly where a man places his sign upon the outside of a building he cannot claim that a person who would otherwise have a right to photograph the building is precluded from using that picture because the sign also appears on the picture. To constitute a violation of the Civil Rights Law, I think it must appear that the use of the plaintiff's picture or name is itself for the purpose of trade and not merely an incidental part of a photograph of an actual building, which cannot be presumed to add to the value of the photograph for trade or advertising, and even a use that may in a particular instance cause acute annoyance cannot give rise to an action under the statute unless it fairly falls within the terms of the statute. It is true that the complaint also states that the picture showed a factory "purporting" to be located in said building and to be plaintiff's said establishment. If the defendants actually used the plaintiff's name in describing the interior of the factory and did not merely photograph the exterior, then it might well be that such use would be within the purview of the statute; but I think that the complaint merely sets forth that in some manner from the nature of the pictures the inference arises that the factory belonged to the firm whose name was on the outside, and that the photograph of this sign constitutes the only use of the plaintiff's name.

It follows, I think, that the demurrer to the second cause of action should be sustained, with leave to the plaintiff to serve an amended complaint within 20 days after notice of entry of order herein. No costs.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

M. Cukor, of New York City, for plaintiff.
W. F. Unger, of New York City, for defendant.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Lehman, J., with leave to defendant to withdraw demurrer and answer on payment of costs. Order filed.